**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**THOMAS STREET**

**Plaintiff,** **CIVIL ACTION NO. 04-CV-74344-DT**

**vs.** **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF SOCIAL SECURITY,** **MAGISTRATE JUDGE MONA K. MAJZOUB**

**Defendant.**
**_________________________/**

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Thomas Street filed an application for Disability Insurance Benefits (DIB) on August 8, 1997 alleging a disability onset date of January 25, 1997. (Tr. 57). Defendant initially denied Plaintiff's application on January 1, 1998. (Tr. 41-44, 161-64). Plaintiff received a hearing before ALJ William J. Musseman on August 4, 1999. (Tr. 396). The ALJ issued a written opinion denying Plaintiff's claims on October 26, 1999. (Tr. 276-286). On January 24, 2002 the Appeals Council remanded Plaintiff's case with instructions for the ALJ to consider new evidence. (Tr. 297-

300). Plaintiff appeared at a second hearing before the ALJ on August 14, 2002. (Tr. 423-436). On February 10, 2003 the ALJ issued a second opinion denying Plaintiff's claim. (Tr. 16-24). The Appeals Council subsequently denied review, and the ALJ's second decision is now the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

**MEDICAL HISTORY**

Plaintiff was born on September 17, 1957. (Tr. 57). On January 26, 1997 Plaintiff was admitted to St. Mary's Medical Center in Saginaw, Michigan following a car accident. (Tr. 172). Plaintiff suffered a concussion and severe contusions of his shoulders, chest, and left hip. *Id.*

Plaintiff suffered severe headaches and neck pain following the accident. On May 9, 1998 Jeffrey R. Levin M.D. examined Plaintiff. (Tr. 203). Dr. Levin concluded that Plaintiff had post concussion syndrome, post concussion cephalgia, and possible cervical radiculopathy. *Id.* X-rays of Plaintiff's wrists taken on May 27, 1997 showed two radioopaque foreign bodies between Plaintiff's 2nd and 3rd metatarsals. (Tr. 185). An EMG taken the same day showed signs of carpal tunnel syndrome on Plaintiff's right side and mild cubital tunnel syndrome on the left. (Tr. 202).

On June 16, 1997 Dr. Levin examined Plaintiff and referred him for further evaluation of his carpal tunnel and cubital tunnel syndromes. (Tr. 201). Plaintiff had a neurological consultation with Gavin I. Awerbuch, a neurologist, on July 7, 1992. (Tr. 220-4). Dr. Awerbuch concluded that Plaintiff was suffering from post-concussion syndrome, post-traumatic cervical and lumbar myofascial pain syndrome, and internal derangement of the shoulders. (Tr. 222). An MRI of Plaintiff's cervical spine taken on July 27, 1997 showed a small osteophyte at the C5-6 level and a

disc herniation at C6-7, both of which compromised the spinal canal but were not compressing Plaintiff's spinal cord. (Tr. 182).

On July 31, 1997 Plaintiff exhibited decreased range of motion in the cervical and lumbar spine and pain in his shoulders during an examination by Dr. Awerbuch, but his condition was otherwise unchanged. (Tr. 219). A short latency auditory evoked potential evaluation performed on August 18, 2005 suggested that Plaintiff had a bilateral pre-cochlear dysfunction. (Tr. 216). An electroencephalogram performed on August 26, 1997 showed no abnormalities. (Tr. 215). Plaintiff underwent a right carpal tunnel release on August 27, 1997. (Tr. 253).

Dr. Levin examined Plaintiff on September 3, 1997. (Tr. 198). He noted that a recent MRI of Plaintiff's shoulder showed inflammation of the supraspinatus tendon and a subchondral cyst next to the humeral head. *Id.* Dr. Levin also noted that Plaintiff had been receiving an excessive amount of Tylenol #3, owing to prescriptions from multiple physicians. *Id.* A CT scan of Plaintiff's right shoulder taken on September 16, 1997 showed no abnormality. (Tr. 187).

On September 19, 1997 Plaintiff underwent a psychological evaluation for the Michigan Disability Determination Service. (Tr. 192-197). Audrey S. Harding, Ph.D. concluded that Plaintiff suffered from a non-specific depressive disorder and post-traumatic stress disorder, and gave Plaintiff a Global Assessment of overall Functioning (GAF) score of 50-60 out of 100. *Id.*

Bradley S. Haas, M.D. performed a physical examination of Plaintiff for the Michigan Disability Determination Service on November 17, 1997. (Tr. 207-209). Dr. Haas concluded that Plaintiff had some left ulnar nerve abnormality, shoulder problems, and costochondritis, but was unable to confirm that Plaintiff had a herniated cervical disc. (Tr. 209). Dr. Awerbuch examined Plaintiff on December 11, 1997 and noted that Plaintiff continued to have severe shoulder and neck

pain, and that a recent EMG of Plaintiff's cervical spine had shown radiculopathy at the C6-7 level. (Tr. 210). He referred Plaintiff to Dr. Jerome Ciullo to evaluate his shoulder for surgery. *Id.*

Dr. Ciullo examined Plaintiff on December 16, 1997. (Tr. 224). He recommended that Plaintiff begin a formal physical therapy program and scheduled Plaintiff for an outpatient subacromial decompression of the right shoulder. *Id*. Dr. Ciullo performed the surgery sometime before May 21, 1998. (Tr. 262) (Dr. Awerbuch's treatment notes from that day refer to Plaintiff's status post surgery). On July 23, 1998 Dr. Awerbuch recommended Plaintiff receive nerve blocks to control his neck and shoulder pain. (Tr. 263).

On September 8, 1998 Herbert J. Roth, Jr., M.D., an orthopaedic spine surgeon, examined Plaintiff. (Tr. 307-09). Dr. Roth observed substantial degenerative changes in Plaintiff's spine at the C5-6, C6-7, and L5-S1 levels, but suggested Plaintiff would benefit from physical therapy and an increase his activity level rather than surgery. *Id.*

Dr. Ciullo examined Plaintiff on September 24, 1998. (Tr. 319). He suggested that Plaintiff take a functional capacity test to see if his right shoulder was ready to tolerate the full range of normal activity. *Id.* Plaintiff's shoulder still had a limited range of motion on August 24, 1998 when Plaintiff was examined by Dr. Awerbuch. (Tr. 264). An MRI of Plaintiff's cervical spine taken on November 21, 1998 showed degenerative changes at the C5-6 and C6-7 levels, with mild stenosis C5-6 and borderline stenosis at C6-7. (Tr. 268). Dr. Roth reviewed the results of this MRI on November 23, 1998 and recommended that Plaintiff undergo a conditioning program rather than neck surgery. (Tr. 310).

Nerve conduction studies performed by Dr. Awerbuch on November 25, 1998 showed radiculopathy in Plaintiff's neck at the C6-7 level and ulnar neuropathy at the left elbow. (Tr. 269).

Dr. Awerbuch examined Plaintiff again on February 2, 1999 and recommended that Plaintiff limit his activities to control his neck and shoulder pain. (Tr. 271). Martin M. Shinedling, Ph.D. administered a psychological examination on April 6, 1999. (Tr. 245-49). He concluded that Plaintiff suffered from post-traumatic stress syndrome and depression, and gave Plaintiff a GAF score of 45/100. (Tr. 248-49).

An MRI of Plaintiff's lumbar spine taken on June 18, 1999 showed degeneration and disc bulging at the L4-5 and L5-S1 levels with a borderline central disc herniation at L5-S1. (Tr. 351). On July 15, 1999 Dr. Roth examined Plaintiff and reviewed then recent medical images of his spine. (Tr. 311). He concluded that Plaintiff should undergo an exercise and therapy program in lieu of surgery. *Id.* On September 29, 1999 Dr. Awerbuch noted that Plaintiff might be developing fibromyalgia in addition to his post-concussion syndrome and other orthopedic problems. (Tr. 353).

An EMG examination of Plaintiff performed on November 4, 1999 showed no nerve abnormalities in Plaintiff's lower back. (Tr. 357). Dr. Ciullo saw Plaintiff on November 18, 1999 regarding his left shoulder pain, and scheduled a subacromial decompression procedure similar to the one that had been successful on his right shoulder. (Tr. 358).

Shoulder arthography and a CT scan taken of Plaintiff's left shoulder on February 4, 2000 revealed no abnormalities. (Tr. 321, 322). An MRI of Plaintiff's cervical spine showed similar results to the MRI taken on November 21, 1998 with degenerative at C5-6 and C6-7. (Tr. 332). Dr. Ciullo performed surgery on Plaintiff's left shoulder on September 1, 2000. (Tr. 312). Dr. Ciullo examined Plaintiff's shoulder two weeks later, on September 12, 2000 and observed normal post-surgical progress. (Tr. 331).

M.R. Pennington, M.D. performed a complete bone scan on September 15, 2000. (Tr. 336). The scan revealed evidence of a fracture of the proximal left fibula of indeterminate age, and some some abnormalities in the left shoulder. (Tr. 336). A myelogram of Plaintiff's spine taken on September 18, 2000 showed mild extradural defects at the L4-5, L5-S1, C5-6, and C6-7 levels, but no disc herniation or nerve root encroachment. (Tr. 337).

On December 5, 2000 Mark C. Stewart proposed that Plaintiff undergo an anterior cervical diskectomy to address his neck pain and the nerve problems in his cervical spine. (Tr. 344). Plaintiff agreed to the surgery. On May 19, 2002 Dr. Shinedling concluded that Plaintiff had moderate restrictions in the activities of daily living, moderate difficulties maintaining social functioning, and frequent deficieincies of concentration. (Tr. 393).

**HEARING TESTIMONY**

Plaintiff received his first hearing before ALJ William J. Musseman on August 4, 1999 (Tr. 396). At that hearing, the ALJ took testimony from Plaintiff and a vocational expert. The

The vocational expert was instructed to testify about the availability of jobs for a hypothetical person of Plaintiff's age and educational level with some additional physical limitations. (Tr. 462). Specifically, the vocational expert was asked to testify concerning a hypothetical person who could lift no more than 20 pounds on occasion or 10 pounds frequently, and who could do no overhead work, no work around unprotected heights, no work that involved repetitive turning or flexing of the neck, no work with repetitive gripping or grasping, and who could only perform simple tasks involving no more than three steps. (Tr. 418). The vocational expert testified that this hypothetical person would be unable to perform any of Plaintiff's past work, but would be able to work in a several thousand positions in the regional economy. (Tr. 418-19).

**STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id*. (citations omitted).

In his October 26, 1999 opinion the ALJ determined that Plaintiff had the residual functional capacity for a limited range of light work with no overhead work, could do no work near unprotected heights, no repetitive turning or flexing of the neck, no complex tasks or tasks requiring more than three simple steps, and no repetitive gripping or grasping. The ALJ concluded that Plaintiff was unable to perform any of his past work, but was not disabled because he retained the ability to perform a substantial number of jobs in the regional economy. On January 24, 2002 the Appeals Council vacated the October 26, 1999 decision, and instructed the ALJ to render a new decision after the consideration of new evidence. Following consideration of the new evidence and second hearing, held on August 14, 2002, the ALJ issued a second opinion denying Plaintiff's claim on

February 10, 2003. The ALJ's conclusion regarding Plaintiff's RFC was unchanged, and he again found that Plaintiff was not disabled at step five.

Plaintiff argues that the ALJ's decision step five finding was error because the ALJ improperly instructed the expert at the August 14, 2002 hearing. At the August 4, 1999 hearing, the ALJ took testimony from a vocational expert who was adequately instructed regarding Plaintiff's RFC. (Tr. 418). The 1999 vocational expert testimony is substantial evidence on the record in support of ALJ's step five finding.

Plaintiff has two remaining objections to the ALJ's decision. First, Plaintiff argues that the Appeals Council Remand Order of January 24, 2002 required the ALJ to find a more limited RFC on remand, and to obtain vocational testimony relevant to the new, more limited RFC. The Appeals Council Order States directs the ALJ on remand to "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's occupational base" only "if warranted by the expanded record." "The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole." (Tr. 399-400). This is direction to consider new evidence, and does not imply that the ALJ should determine a more limited RFC now on remand. The ALJ's RFC finding is therefore not error unless it was not supported by substantial evidence on the record.

Plaintiff argues that the record as a whole demanded that the ALJ include additional psychological limitations into Plaintiff's RFC. In support of this argument, Plaintiff relies principally on the the May 19, 2002 report of Dr. Shinedling. (Tr. 387-394).

The ALJ did not incorporate all of Dr. Shinedling's findings into Plaintiff's RFC. He properly discounted Dr. Shinedling's May 19, 2002 opinion after noting its severe defects. While

Dr. Shinedling claims to have seen Plaintiff on a bi-weekly basis in 2000 and 2001, the record has evidence of only five mental health consultations in 2000 and three in 2001. Dr. Shinedling's May 19, 2002 conclusion that Plaintiff was essentially unable to function in a work setting is unsupported by objective clinical evidence, is incompatible with the conclusions he made in the same report concerning Plaintiff's substantial ability to care for himself and engage in the activities of daily living, and conflicts with Plaintiff's own descriptions of his daily activities. The ALJ was therefore entitled to rely on the other evidence in the record, which suggests that Plaintiff was unable to perform complex tasks requiring persistent concentration, but otherwise retained normal mental function.

**RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States*

*District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 11/21/05

s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: 11/21/05

s/ Lisa C. Bartlett
Courtroom Deputy